*892 OPINION.
Milliken:
(1) The investment made in the stock of the Big Salmon Dredging Co. was a transaction entered into for profit. While the record does not show when the stock was issued to Mr. Haskell, it appears that it was paid for just prior to and just after March 1, 1913. Its value was its cost, $10,000. There is nothing in the record to impeach the bona fides of the sale in May, 1920. The Commissioner, therefore, erred in refusing to allow the loss claimed.
(2) The purchase by Haskell of one share of stock in the Bloomfield Hills Country Club was clearly not a transaction entered into for profit. Nor can it be held that the loss arising from the sale of the share was a loss incurred in trade or business. The purchase of the share of stock was made rather for the personal convenience of Haskell than for business purposes. The Commissioner did not err in refusing to allow the deduction of this loss. Franklin M. Magill *893 v. Commissioner, 4 B. T. A. 272; Appeal of Arthur B. Chivers, 4 B. T. A. 1083.
(3) The decedent’s right to take the deduction of $9,087.87, resulting from the operation of the farm during the year 1921, turns on the question whether he engaged in farming as a business, with the expectation of making gain, or for recreation or pleasure. See Thomas F. Sheridan v. Commissioner, 4 B. T. A. 1299, and Reginald C. Vanderbilt v. Commissioner, 5 B. T. A. 1055, where the authorities are so thoroughly collated as to make further citation unnecessary.
The farm in question was a well equipped dairy farm. It was operated in a businesslike manner. Its accounts were kept so as to show the most minute items of income and outgo. Its only relation to the residence was that of propinquity. This gave Haskell a better opportunity to superintend his farm than if he had lived at a distance from it. He availed himself of the opportunity to the fullest extent compatible with his other interests. The products of the farm were sold, even the family paying for what they consumed. The dairy route was similar to that operated by ordinary dairy farms. The farm was not carried on for display. The cattle had an average value of $44 per head. Cattle of this value are not kept for display.
All the essentials of a farming business were present, unless such losses were incurred in the taxable year and in previous years as to demonstrate that Haskell carried on this enterprise without the hope of ever making it profitable and for the gratification of a personal whim. That the latter element is absent is shown by the volume of production, the amounts received from sales, and the methodical way in which the farm was operated. So far from this undertaking being a personal whim, the uncontradicted evidence shows that Mr. Haskell repeatedly stated that he not only intended to make his farm pay, but that he expected to make it pay. The fact that losses occur •is only one of the evidential facts from which it is to be determined whether one carries on farming as a business or only for recreation. If losses, or even repeated losses, were the only criterion by which farming is to be judged a business, then a large proportion of the farmers of the country would be outside the pale. It is the expectation of gain, and not gain itself which is one of the factors which enter into the determination of the question. We have not the means of placing ourselves in Mr. Haskell’s shoes and if we could, we should be slow in holding that his repeatedly expressed judgment was wrong. It is sufficient that the farm was operated in a businesslike manner and with a well defined and possibly reasonable hope that profits would eventually accrue. These factors being present, it follows that the decedent was engaged, during 1921, in farming *894 as a business and that the losses incurred in this operation are a proper item of deduction, under section 214(a) (4) of the Revenue Act of 1921.
Judgment will be entered on 15 days notice, under Bule 50.